IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMY L. CORTER, ) | 4:09CV3091 |
| ) | |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

In this social security appeal, plaintiff Amy L. Corter claims that the Commissioner's decision to deny her disability insurance benefits[1] is contrary to law and not supported by substantial evidence. The Commissioner's decision will be affirmed.

## *I. BACKGROUND*

Corter applied for benefits under the Social Security Act on November 7, 2005, claiming that she became disabled at the age of 33 on October 27, 2005, due to back and knee pain, asthma, water retention, depression, colitis, and obesity.[2] (Tr. 57, Adult Disability Report; Tr. 716.) Corter has a high school education and has most recently been employed as an assisted-living caregiver and telemarketer. After the

---

[1]The plaintiff's complaint (filing 1) requests that this court review the final decision of the Commissioner denying the plaintiff's "Application for Social Security Disability and Supplemental Social Security Income Disability Benefits for lack of disability." However, as the defendant points out (filing 15), the plaintiff did not apply for Supplemental Security Income. (Tr. 8, 12, 44-46.)

[2]When Corter applied for benefits, she reported that she was 5'6" and weighed 356 pounds; at the administrative hearing, she testified that she was 5'4" and weighed 332 pounds. (Tr. 56, 711-12.)

alleged onset of her disability, Corter continued to work part-time in her caregiver position until she was fired for failing to fill out an incident report. As of the date of the hearing, Corter was working part-time as a telemarketer.

Corter's application for disability benefits was denied initially (Tr. 38) and on reconsideration (Tr. 32). After an administrative hearing held pursuant to Corter's request, the administrative law judge ("ALJ") issued an unfavorable decision on September 2, 2008, concluding that Corter was not under a disability at any time through the date of his decision. (Tr. 9-18.) On March 9, 2009, the Appeals Council denied Corter's request for further review, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-8.)

### A. The ALJ's Findings

The ALJ evaluated Corter's claims according to the five-step sequential analysis prescribed by the social security regulations. See 20 C.F.R. § 404.1520. Among other things, the ALJ found that (1) Corter has not engaged in any substantial gainful activity since October 27, 2005; (2) Corter "has the following severe impairments: obesity, degenerative disc disease, and depression"; (3) Corter does not have impairments that meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) with certain exceptions[3], Corter has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b); and (5) there is light unskilled work that exists in significant numbers in the national economy that Corter can perform, including bagger, garment sorter, and flat work

---

[3] The ALJ concluded that Corter had the RFC to perform light work with the following exceptions: "she should only occasionally climb, stoop, crouch, crawl, or kneel; she should avoid concentrated exposure to extreme cold, vibration, fumes, and work hazards; and she is capable of understanding, remembering, and carrying out simple one, two, and three-step instructions." (Tr. 15-16.)

tier.[4]

### B. Issues on Appeal

Corter requests that the Commissioner's decision be reversed and the case remanded for payment of benefits because "[i]n his hypotheticals to the Vocational Expert the judge did not include the severe impairment of obesity." (Filing 19 at 4.)[5]

### II. DISCUSSION

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.* at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

Partially based on the testimony of the vocational expert ("VE"), the ALJ in this case found that Corter was not disabled because she was able to perform other light unskilled work. (Tr. 17-18; Tr. 27 (CV of Thomas C. Dachelet, certified

---

[4]The ALJ also noted that Corter would not be disabled even with an RFC of a limited range of sedentary work because the vocational expert identified a significant number of jobs in that category that could be performed by someone like Plaintiff, including ampule sealer, loader of semiconductor dies, and weight tester. (Tr. 18.)

[5]While Plaintiff's brief alleges seven more errors in a numbered list, Plaintiff's counsel fails to discuss any of them. Accordingly, I shall treat these issues as abandoned. *See* NECivR 39.2(c).

rehabilitation counselor and vocational expert for Social Services Administration).) "Ordinarily, the Commissioner can rely on the testimony of a VE to satisfy its burden of showing that the claimant can perform other work." *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008). However, testimony from a VE constitutes substantial evidence "'only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.'" *Id.* (quoting *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007)).

At the administrative hearing, the ALJ asked Corter to identify "the main thing that keeps you from working." (Tr. 716.) Corter replied, "It's not being able to bend over and stoop, and I can't lift over 25 pounds due to my weight." When asked whether her inability to bend and stoop was caused by her weight or her back condition, Corter answered, "Well, my back condition and also to do with the weight too. Both." (Tr. 716.)

The ALJ then posed a series[6] of hypothetical questions to the VE that included Corter's impairments but, as the Commissioner admits, did not expressly reference Corter's obesity.[7] However, the ALJ included Corter's self-described limitations—whether they were caused by her weight or her back condition—when he asked the VE whether a person who, among other things, "is limited to lifting 20

---

[6]A series of hypothetical questions, rather than a single question, is proper so long as all credible limitations were presented to the vocational expert in a comprehensible manner. *See Bland v. Bowen*, 861 F.2d 533, 534 (8th Cir. 1988) (VE was asked series of hypothetical questions that embodied claimant's various exertional and nonexertional limitations); *Ward v. Heckler*, 786 F.2d 844, 848 (8th Cir. 1986) (ALJ posed series of hypothetical questions that included claimant's physical impairments, but varied severity of limitations imposed).

[7]Interestingly, even the plaintiff's attorney did not mention Corter's obesity in his hypothetical question to the ALJ. (Tr. 745.)

4

pounds occasionally" and "[s]hould only occasionally . . . stoop . . . or crouch" could perform work in the national economy. (Tr. 739; Tr. 741, 743, 744.)

Despite the fact that the ALJ's hypothetical questions to the VE did not refer to Corter's obesity, the questions accurately captured the "concrete consequences" of Corter's impairments, which is all the ALJ was bound to do. This is especially so since Corter fails to explain how including her obesity would have changed the ALJ's hypothetical questions. That is, Corter has failed to identify any "concrete consequences" of her obesity that were missing from the ALJ's hypothetical questions. Therefore, the ALJ did not err in this regard. *Robson*, 526 F.3d at 391 (ALJ did not err in excluding plaintiff's obesity from hypothetical question posed to VE when hypothetical accurately described all of plaintiff's physical limitations). *See also England v. Astrue*, 490 F.3d 1017, 1023-24 (8th Cir. 2007) (ALJ's hypothetical question need not frame claimant's impairments in "specific diagnostic terms," but should instead capture concrete consequences of such impairments (internal quotation marks and citations omitted)); *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (ALJ's hypothetical question to VE did not need to include additional limitations when question included all of plaintiff's limitations, as found to exist by ALJ based on the record); *Howe v. Astrue*, 499 F.3d 835, 841-42 (8th Cir. 2007) (same); *Hillier v. Social Security Administration*, 486 F.3d 359, 365-66 (8th Cir. 2007) (ALJ's hypothetical question did not need to expressly state that plaintiff was functionally illiterate and had poor reading and writing skills when hypothetical question captured the "concrete consequences" of plaintiff's borderline intellectual functioning by limiting plaintiff to simple, concrete work).

### III. CONCLUSION

Because the ALJ's hypothetical questions to the VE contained all of the concrete consequences of Corter's physical deficiencies, including the consequences of her obesity, there was substantial evidence on the record as a whole to support the

5

ALJ's finding that Corter could perform light unskilled work and was therefore not disabled within the meaning of the Social Security Act.

Accordingly,

IT IS ORDERED that the decision of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g). Final judgment will be entered by separate document.

DATED this 24th day of March, 2010.

> BY THE COURT:
> s/ *Richard G. Kopf*
> United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.